UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR B. CAPONEGRO,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FIRST NATIONAL BANK OF LAYTON, AND JOHN DOES 1-10,<br><br>Defendants. | Civ. No. 15-cv-3431 (KM) (MAH)<br><br>MEMORANDUM OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

## I. Introduction

The plaintiff, Arthur B. Caponegro ("Caponegro"), brought this action against the defendants, the United States Department of Housing and Urban Development ("HUD") and First National Bank of Layton ("FNBL"), in connection with a "reverse mortgage"[1] transaction that Caponegro entered into with FNBL. On August 16, 2016, Caponegro filed a four-count amended complaint (ECF no. 33, referred to hereinafter as the "Complaint" and cited as

---

[1] On its website, HUD explains reverse mortgages as follows:

> A reverse mortgage is a special type of home loan that lets you convert a portion of the equity in your home into cash. The equity that you built up over years of making mortgage payments can be paid to you. However, unlike a traditional home equity loan or second mortgage, [Home Equity Conversion Mortgage program ("HECM")] borrowers do not have to repay the HECM loan until the borrowers no longer use the home as their principal residence or fail to meet the obligations of the mortgage.

https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/hecm/rmtopten.

1

"Compl."). Only Counts 1 and 4 appear to assert claims against FNBL.[2] Count 1 is a claim for breach of contract, and Count 4 is a claim for negligence. In Count 1, the Complaint also presents allegations that sound in fraud, alleging that FNBL made misrepresentations and that it falsified documents and forged Caponegro's signature. Now before the Court is FNBL's motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for failure to state a claim.[3]

For the reasons stated below, FNBL's motion to dismiss (ECF no. 41) is **GRANTED**.

## II. Standard on a Motion to Dismiss

FNBL has moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[2] Counts 2 and 3 of the Complaint clearly pertain to HUD only. Count 2 is titled "HUD's Contravention of the Anti-Displacement Provision of the HECM Statute is Arbitrary & Capricious or Otherwise not in Accordance with Law and Exceeded HUD's Statutory Authority in Violation of § 706(2) of the APA." (Compl. ¶¶ 72–81) Count 3 is titled "HUD has failed to take immediate action necessary to provide Lenders with funds to which they are entitled, in violation of Section 706(1) of the Administrative Procedure Act." (Compl. ¶¶ 82–85)

[3] As of January 31, 2017, HUD stated that it has not been properly served pursuant to Fed. R. Civ. P. 4(i) and takes no position on FNBL's motion to dismiss. (Letter, ECF no. 44)

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

However, a plaintiff alleging fraud or mistake must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). As the Third Circuit has explained, "[a] plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (citation and quotation marks omitted). In other words, a plaintiff may satisfy this requirement by pleading "the date, time and place" of the alleged fraud or deception, or by "otherwise inject[ing] precision or some measure of substantiation" into the allegation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). Additionally, to survive a motion to dismiss, plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Gray v. Bayer Corp.*, No.Civ.A.08–4716, 2010 WL 1375329, at *3 (D.N.J. Mar. 31, 2010) (citing *Lum*, 361 F.3d at 224).

The heightened specificity required by Rule 9(b) extends to the pleading of all claims that "sound in fraud." *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 372 (D.N.J. 2015). This includes Caponegro's claims alleging misrepresentation and falsification of documents. *See Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85, n.3 (3d Cir. 2015) (affirming Rule 9(b) dismissal of claims for intentional misrepresentation, negligent misrepresentation, and unjust enrichment).

Where a plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). *Pro se* plaintiffs are also not exempt from meeting the heightened pleading requirements of Rule 9(b) when alleging claims that sound in fraud. *See Kowalsky v. Deutsche Bank Nat'l Trust Co.*, No. 14-07856 (CCC)(JBC), 2015 WL 5770523, at *9 (D.N.J. Sept. 30, 2015).

At the time Caponegro filed the Complaint, he was represented by counsel, Kenneth C. Marano, Esq., but by the time he filed his opposition to FNBL's motion to dismiss, he was proceeding pro se. As of May 11, 2017, Caponegro is once again represented by counsel, Toni Belford Damiano, Esq. (Notice of Appearance, ECF no. 57) Because Caponegro was represented by counsel at the time he filed the Complaint, the Complaint is not entitled to the more forgiving standards applied to pro se pleadings. However, this makes little

difference in this case because, even if construed liberally, the Complaint fails to state a claim.

### III. The Complaint

For purposes of this motion to dismiss, the allegations of the Complaint are assumed to be true. Although the allegations suffer from insufficient clarity, I have attempted to make sense of them.

The Complaint alleges that Caponegro owns and resides at 513 Winterburn Grove, Cliffside Park, New Jersey. (Compl. ¶ 7) On or about July 23, 2012, he entered into a "reverse mortgage" transaction with FNBL in the amount of $400,500. (*See id.* ¶¶ 61–65) Caponegro never received financial counseling regarding his reverse mortgage, which he alleges was a failure to meet the requirements of 12 U.S.C. § 1715z-20.[4] As a result, "Defendants

---

[4] The section, entitled "Insurance of home equity conversion mortgages for elderly homeowners," authorizes HUD to:

> to carry out a program of mortgage insurance designed--
>
> > (1) to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets; and
>
> > (2) to encourage and increase the involvement of mortgagees and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners.

12 U.S.C. § 1715z-20(a).

Among the criteria "[t]o be eligible for insurance under the section, a mortgage shall . . . have been executed by a mortgagor who . . . has received adequate counseling, as provided in subsection (f), by an independent third party." *Id.* § 1715z-20(d)(2)(B). Further subsection (f) states that:

> The Secretary shall provide or cause to be provided adequate counseling for the mortgagor, as described in subsection (d)(2)(B). Such counseling shall be provided by counselors that meet qualification standards and follow uniform counseling protocols. . . . The protocols shall require a qualified counselor to discuss with each mortgagor information which shall include . . . the financial implications of entering into a home equity conversion mortgage. . . . The Secretary may, in lieu of providing the

5

breached the contract entered into by Plaintiff." (*Id.* ¶ 63) Caponegro relied upon "Defendant's misrepresentation" to his detriment by not having been advised about the nature of the loan and its consequences to his home ownership. (*Id.* ¶ 64)

Caponegro alleges that FNBL's sale of the ownership interest in the loan to Wells Fargo Bank, N.A., "on or before the Trust Closing Date of August 30, 2012, . . . constitute[d] a Breach-separation of the Note and Mortgage." (*Id.* ¶ 66) Allegedly, "Defendant breached its obligations under the contract with Plaintiff by splitting the Note and Mortgage, a condition precedent . . . thereby voiding the contract." (*Id.* ¶ 68)

Caponegro further alleges that "Defendant falsified the original document, and forged Plaintiff's signature encumbering the property for the amount of $862,500 at a 2.748% interest rate." (*Id.* ¶ 67)[5]

---

consumer education required by this subsection, adopt alternative approaches to consumer education that may be developed as a result of such consultations, but only if the alternative approaches provide all of the information specified in this subsection.

*Id.* § 1715z-20(f).

Pursuant to the statute, "The Secretary shall require each mortgagee of a mortgage insured under this section to make available to the homeowner . . . at the time of the loan application, a written list of the names and addresses of third-party information sources who are approved by the Secretary as responsible and able to provide the information required by subsection (f)." *Id.* § 1715z-20(e)(1).

[5] Although not relevant to FNBL's motion to dismiss, I note that Caponegro alleges generally that HUD has failed to use its "broad statutory powers to prevent the displacement of Plaintiff from his home pending a decision on the merits of [his] case." (*Id.* ¶ 29) Caponegro also alleges that his home is worth less than the reverse mortgage loan, making his property "difficult to sell and impossible to refinance." (*Id.* ¶¶ 39 – 40) This state of affairs is allegedly due to a change in HUD's interpretation of the HECM program. HUD initially treated loans obtained through the HECM Program as non-recourse loans. Then at some point in 2008 it began to treat these loans—prospectively and retroactively—as recourse loans. (*See id.* ¶ 36) He says that he "is facing foreclosure and eviction from his family homes due to Defendant's failure to protect him from displacement." (*Id.* ¶ 58)

6

## IV. Analysis

I start with a general observation. At many points in the Complaint, references to the defendants are ambiguous. The Complaint sometimes refers to "Defendant" or "Defendant[]s," without further identifying which of the two named defendants is intended. It is not always possible to confidently infer against which of the defendants an allegation is directed.

A plaintiff must "specify which defendants performed which acts." *Zuniga v. Am. Home Mortg.*, No. 14-CV-2973 (KM), 2016 WL 886214, at *2 (D.N.J. Mar. 7, 2016); *see also Galicki v. New Jersey*, No. 14-169 (JLL), 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (Rule 8 is not satisfied where a complaint "provide[s] only conclusory allegations against Defendants as a group"); *Triple T Constr., L.L.C. v. Township of W. Milford*, No. 14-2522 (JLL), 2014 WL 2624764, at *4 (D.N.J. June 11, 2014) (Rule 8 is not satisfied where a complaint "lump[ed] all Defendants together, failing to put Defendants on notice of their own alleged wrongdoing").

If Caponegro chooses to file an amended complaint, he must identify more clearly which defendants are alleged to be responsible for each action and against which defendants each count is asserted.

I now proceed to analyze the sufficiency of the allegations in Counts 1 and 4.

### A. Fraud/Breach of Contract Claim (Count 1)

As to Count 1, FNBL contends that Caponegro has failed to meet the heightened pleading standard for fraud and related claims under Rule 9(b). I agree. Under Rule 9(b), a plaintiff must state the "who, what, when, where, and how" of the fraud they allege. The Complaint does not satisfy this requirement.

#### 1. Forgery Allegations

With regard to the alleged forgery, Caponegro alleges only that "Defendant falsified the original document, and forged Plaintiff's signature encumbering the property for the amount of $862,500 at a 2.748% interest rate." (*Id.* ¶ 67) Caponegro's allegations fail to specify exactly what document

7

was allegedly forged, when it was forged, how he knows the document was forged, and the date on which he received the forged documents. Even if defendants have superior knowledge of the underlying facts, Caponegro must alleged those facts of which he is aware, in order to "otherwise inject precision or some measure of substantiation" into the fraud allegation. *See Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004)). Caponegro should, at the very least, allege what he learned when he discovered the alleged fraud. Yet, he does not plead such facts. Caponegro's forgery-based fraud allegation thus fails to satisfy the requirements of Rule 9(b).

### 2. Misrepresentation Allegations

The Complaint similarly lacks the required specificity with regard to the alleged misrepresentation resulting from one or both defendants' failure to provide financial counseling to Caponegro. (*See* Compl. ¶ 64)

To state a claim for fraudulent concealment or intentional misrepresentation, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Donnelly v. Option One Mortg. Corp.,* No. CIV.A. 11-7019 ES, 2014 WL 1266209, at *11 (D.N.J. Mar. 26, 2014); *Arcand v. Brother Int'l Corp.,* 673 F. Supp. 2d 282, 305 (D.N.J. 2009).

Here, Caponegro has not alleged particular facts to satisfy these elements. What information did FNBL conceal from Caponegro? Was there any misrepresentation aside from the general alleged failure to ensure mortgage-related counseling? The Complaint states only that Caponegro "never received counseling." (Compl. ¶ 7) The Complaint does not allege that FNBL played any role in any such failure. The cited regulation does not require a bank to provide counseling, but only to supply a list of third parties from whom such counseling could be had. But the Complaint does not even allege that FNBL

failed to provide such information regarding opportunities to obtain counseling.[6] Nor does it allege that FNBL intended Caponegro to rely on any omission, that Caponegro in fact reasonably relied on the omission, or what that omission consisted of.

Further, where a defendant is alleged to have fraudulently concealed information, "New Jersey courts will not imply a duty to disclose." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). "The question of whether there is a duty to disclose, constituting a fraudulent concealment, is a matter of law." *Arcand*, 673 F. Supp. 2d at 305 (citing *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551, 704 A.2d 38 (Law. Div. 1997)), *aff'd*, 246 F.3d 289 (3d Cir. 2001). The duty to disclose arises in the following three types of relationships:

> (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.

*Id.* (citing *Lightning Lube*, 4 F.3d at 1185; *see Maertin v. Armstrong World Industries, Inc.*, 241 F.Supp.2d 434, 461 (D.N.J. 2002)).

Regulations aside, the Complaint fails to allege facts that plausibly establish a relationship that would give rise to a duty for FNBL to disclose information to Caponegro by ensuring that he received counseling. As a general rule, "[i]t would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table." *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) (internal quotations

---

[6] 12 U.S.C. § 1715z-20 does not appear to impose any duty on the mortgagee to provide the counseling. Rather, "[t]he Secretary shall require each mortgagee of a mortgage insured under this section to make available to the homeowner . . . at the time of the loan application, a written list of the names and addresses of third-party information sources who are approved by the Secretary as responsible and able to provide the information required by subsection (f)." *Id.* § 1715z-20(e)(1). The Complaint does not allege that FNBL failed to provide such a list of approved third-party information sources.

9

omitted). Further, New Jersey courts apply "a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553, 704 A.2d 38, 45 (App. Div. 1997) (internal quotations omitted). Nothing in the Complaint alleges facts that would undermine that presumption here.

### 3. Breach of Contract

It is not clear whether the Complaint was intended to assert an independent breach of contract claim aside from the fraud/misrepresentation claims. If so, such a contract claim would fail to satisfy the minimal standards of Rule 8(a).[7] To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The Complaint alleges none of these things. Because the Complaint fails to meet the minimal obligation of identifying the contractual provision it alleges FNBL breached, it is impossible to determine whether "splitting the Note and Mortgage" was a breach.

Accordingly, Count 1 of the Complaint is dismissed.

### B. Negligence Claim (Count 4)

In Count 4, Caponegro alleges that FNBL owed him a "duty to exercise reasonable care and skill to comply with 12 U.S.C. § 1715z-20(i)," and that "Defendants' actions and ongoing behavior are and have been in direct violation of 12 U.S.C. § 1715z-20(i) and accordingly constitute negligence per se." (Compl. ¶ 88)

---

[7] FNBL appears to construe the fraud and misrepresentation allegations as the basis for the breach of contract claim. It therefore argues that the entire claim should be subject to Rule 9(b)'s heightened pleading standard. (Def. Mot. 6, ECF no. 41) It matters little, because I find that the claim, on its face, does not even meet the ordinary Rule 8(a) standard, *see infra*. Further, in his opposition brief, Caponegro does not address any separate breach of contract claim.

10

The Complaint does not plausibly allege negligence *per se.* "Violation of a statute or regulation may provide the basis for negligence *per se* when the following three elements are present: '1) the statute or regulation must clearly apply to the conduct of the defendant; 2) the defendant must violate the statute or regulation; and 3) the violation of the statute must proximately cause the plaintiff's injuries.'" *Vassallo v. Bank of N.Y.*, No. CV 15-3227, 2016 WL 1394436, at *4 (D.N.J. Apr. 8, 2016) (quoting *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986)).

At the very least, the Complaint does not satisfy the first element of negligence *per se* because section 1715z-20(i) does not clearly apply to the conduct of FNBL. That subsection mandates that HUD shall take any action necessary to protect certain interests of reverse mortgagors.[8] It does not appear

---

[8] The subsection, entitled "Protection of homeowner and lender," provides that:

(1) Notwithstanding any other provision of law, and in order to further the purposes of the program authorized in this section, the Secretary shall take any action necessary--

> (A) to provide any mortgagor under this section with funds to which the mortgagor is entitled under the insured mortgage or ancillary contracts but that the mortgagor has not received because of the default of the party responsible for payment;
>
> (B) to obtain repayment of disbursements provided under subparagraph (A) from any source; and
>
> (C) to provide any mortgagee under this section with funds not to exceed the limitations in subsection (g) to which the mortgagee is entitled under the terms of the insured mortgage or ancillary contracts authorized in this section.

(2) Actions under paragraph (1) may include--

> (A) disbursing funds to the mortgagor or mortgagee from the Mutual Mortgage Insurance Fund;
>
> (B) accepting an assignment of the insured mortgage notwithstanding that the mortgagor is not in default under its terms, and calculating the amount and making the payment of the insurance claim on such assigned mortgage;
>
> (C) requiring a subordinate mortgage from the mortgagor at any time in order to secure repayments of any funds advanced or to be advanced to the mortgagor;

11

to impose any obligation on a mortgagee, such as FNBL. Therefore, Caponegro has failed to plausibly allege that FNBL has violated this section, and consequently cannot plausibly allege negligence *per se.*

Further, as FNBL has argued in its brief, to the extent that Caponegro intends to assert a negligence claim based on a duty arising from a contractual relationship, the economic loss doctrine precludes recovery under a tort cause of action. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316, 788 A.2d 268, 280 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.") For the reasons stated in Section IV.A.2, I am "unable to discern," under the facts as alleged in the Complaint, "any duty owed to the plaintiff [by FNBL] that is independent of the duties that arose under the contract." *See id.*

Accordingly, Count 4 of the Complaint is dismissed.

## V. CONCLUSION

For the reasons set forth above, I will grant the FNBL's motion to dismiss the Complaint. This dismissal is without prejudice to the filing of a properly supported motion to amend, pursuant to Fed. R. Civ. P. 15, attaching a proposed amended complaint, within 30 days. An appropriate Order follows.

Dated: May 18, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.

---

    (D) requiring a subrogation to the Secretary of the rights of any parties to the transaction against any defaulting parties; and

    (E) imposing premium charges.

12 U.S.C. § 1715z-20(i).